Petition for Review of Allesandro **D'ANTONIO**, Carmela D'Antonio, Nassimo D'Antonio, Michele D'Antonio, Pasqualine D'Antonio, infant children, Petitioners,

v.

Edward J. **SHAUGHNESSY**, as District Director of Immigration and Naturalization for the District of New York, Respondent.

United States District Court
S. D. New York.
Jan. 13, 1956.

Vincent J. Cuti, New York City, for petitioners.

Paul W. Williams, U. S. Atty., for the S. D. of New York, New York City, for respondent. Harold J. Raby, Asst. U. S. Atty., and Roy Babit, for Immigration and Naturalization Service, New York City, of counsel.

HERLANDS, District Judge.

Petitioners are a family group of Italian nationals. The issue is whether they have the right to prosecute an application for an adjustment of their immigration status under 50 U.S.C.A.Appendix § 1971d.[1]

The following is the applicable provision in that section:

"Any alien who establishes that prior to July 1, 1953, he lawfully entered the United States as a bona fide nonimmigrant and that he is un-

---

1. Section 6 of the Refugee Relief Act of 1953, enacted August 7, 1953, c. 336, 67 Stat. 400, as amended on August 31, 1954, 68 Stat. 1044.

able to return to the country of his birth, or nationality, or last residence because of *persecution or fear of persecution on account of race, religion, or political opinion,* * * * may, not later than June 30, 1955, apply to the Attorney General of the United States for an adjustment of his immigration status. * * * " (Emphasis supplied.) [2]

The issue resolves itself into a pure question of law involving the interpretation of the words "persecution or fear of persecution", as used in the above quoted provision.

Petitioners have offered to prove that they fear persecution from certain Communist elements in Italy because of the wartime activities of the father (one of the petitioners) in aid of the United States Armed Forces while such Armed Forces were engaged in Italy and while the father was in Italy. This offer of proof is detailed in a memorandum which is attached to the formal application as the answer to item or question "8" thereon.

Respondent has denied petitioners' application for an adjustment of immigration status upon the sole ground that, as a matter of law, the words "persecution or fear of persecution" must be read as being limited to persecution by the government of the foreign country concerned.[3]

The question thus presented appears to be a relatively novel one. The problem has, apparently, been discussed in only one other case, Lavdas v. Holland,

D.C.E.D.Pa., 139 F.Supp. 514, opinion by Chief Judge Kirkpatrick.

Moreover, neither the Congressional Record nor the reports of the appropriate Senate and House Committees shed light on the legislative intent underlying the statutory language under consideration.

Since the statute represents remedial legislation, it should not be narrowly construed. The language of the statute should be given its ordinary meaning. The statute employs the phraseology "persecution or fear of persecution", without the qualifying restriction urged by respondent. If Congress had chosen to impose such a qualification, "it would have been easy enough to do so explicitly", and "there is not enough showing of such intent to vary the literal language of the statute." Cf. United States v. Lewis, 2 Cir., 227 F.2d 524, 525.

A study of the legislation dealing with the subject of returning a deportee to a country where he might be a victim of persecution leads to the conclusion that Congress articulated a liberal, rather than a restrictive, ideology in defining the conditions that might constitute the basis for withholding deportation in the case of aliens occupying the position of these petitioners. For example, clues to the legislative intent may be found in two other statutory provisions which also deal with the problem of a deportee facing deportation to a country wherein he may face persecution. One of these

---

2. As originally worded, the section's applicability was limited to the situation where the "persecution or fear of persecution" resulted from events which had occurred subsequent to the alien's entry into the United States.

The amendment of August 31, 1954 was a liberalizing amendment in that it eliminated the qualification that the "persecution or fear of persecution" must have resulted from events which had occurred subsequent to the alien's entry into the United States.

3. The report of the Special Inquiry Officer states, in part: "The adult aliens

claim that they cannot return to Italy, * * * because of fear of persecution by Communists in Italy. It has never been established that Italy is a country to which one of its citizens cannot return because of fear of persecution. * * * He [the adult male alien] contends that for reasons applying to him individually, namely—anti-Communist activities in Italy during the last war, it would be impossible for him and his family to return. * * * " the Acting Regional Commissioner states, in part: "It is not claimed that they fear persecution by the government of Italy."

other statutes—8 U.S.C.A., § 1253(h)[4] as presently worded—provides: .

"The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to *physical* persecution and for such period of time as he deems to be necessary for such reason." (Emphasis supplied.)[5]

The second of these other statutes— 50 U.S.C.A.Appendix § 1953(a) and 1953(b) [6]—is substantially similar to section 1971d—the statute involved in the case at bar—except for the date as of which refugees must have entered the country to qualify. Section 1953(a) of 50 U.S.C.A.Appendix, section 4(a) of the Displaced Persons Act, as presently worded, provides that any alien who (1) entered the United States prior to April 30, 1949 and who was on that date in the United States and (2) is otherwise admissible under the immigration laws, and (3) is a " 'Displaced Person residing in the United States,' " as defined in section 1953(b), section 4(b) of the Displaced Persons Act, may, within two years following the effective date of that Act, apply to the Attorney General for an adjustment of his immigration status. Section 1953(b) of that Act defines " 'Displaced Person residing in the Unit-

ed States' "; and one element of the definition is that such a person must be one who cannot return to the country of his birth, nationality or last residence because of "persecution or fear of persecution on account of race, religion, or political opinion."

In none of these statutes, including the one involved in the case at bar, has Congress inserted the qualification now being urged by respondent—that the persecution must be by an official foreign government. On the contrary, where Congress intended "persecution" to mean persecution by the official government of a foreign country, Congress so stated explicitly, as in the case of "persecution by the Nazi government." [7]

Furthermore, the very language used in the statute under consideration—section 1971d, section 6 of the Refugee Relief Act—provides internal evidence of a broader policy on the part of Congress in enacting that section, when that language is compared with the wording of a cognate statute such as section 1253(h) of title 8 U.S.C.A. While both deal with the problem of a deportee facing deportation to a country wherein he may be persecuted, under section 1253(h) the immigrant must show fear of *"physical* persecution"* [emphasis supplied], and even then the action on the part of the Attorney General in staying deportation is ap-

---

4. Section 23 of the Internal Security Act of 1950, 64 Stat. 987, as amended by section 243(h) of the Immigration and Nationality Act of 1952, enacted June 27, 1952, c. 477, 66 Stat. 163.

5. For an analysis of this statute, see 62 Yale L.J. 845 (1953), Protecting Deportable Aliens From Physical Persecution: Section 243(h) of the Immigration and Nationality Act of 1952.

6. Section 4(a) and (b) of the Displaced Persons Act of 1948, enacted June 25, 1948, c. 647, 62 Stat. 1009, as amended by Act of June 16, 1950, 64 Stat. 219, 224, and as further amended by Act of June 27, 1952, c. 477, 66 Stat. 163 (the Immigration and Nationality Act).

7. The phrase "persecution or fear of persecution" or substantially similar phraseology is also found in other sections of the Displaced Persons Act and the Ref-

ugee Relief Act. Thus, section 2(c) of the Displaced Persons Act, 50 U.S.C.A. Appendix, § 1951(c), defines an "Eligible displaced person" in part as one who " * * * was a victim of persecution *by the Nazi government."* (Emphasis supplied.) In contrast, section 2(d) of the Act, 50 U.S.C.A.Appendix, § 1951 (d), in a manner similar to section 4(b) of the Act, uses the phrase "persecution or fear of persecution" without specifically inserting the qualification that the persecution must stem from an officially constituted foreign government.

Section 2(b) of the Refugee Relief Act, 50 U.S.C.A.Appendix § 1971(b), contains the phrase "fear of persecution on account of race, religion, or political opinion"; it should be noted that here also there is no specific qualification requiring that such persecution be by the official government of a foreign country.

parently at his discretion. On the other hand, under section 1971d, enacted subsequent to section 1253(h), it is sufficient that the alien show "persecution or fear of persecution on account of race, religion, or political opinion," and it is apparently mandatory upon the Attorney General that he submit the matter to Congress for further action if he finds facts supporting the existence of the statutory condition. Under the statute applicable in this case, the persecution clause has been broadened to include persecution or "fear of persecution," and not merely physical persecution. Thus, the statute applicable to the instant case apparently reflects a liberal and remedial purpose on the part of Congress; and it should be construed to effectuate that purpose.

"Persecution" means persecution. The potential effects and dangers of persecution on a given individual may be equally serious, whether the source of such persecution be the official government of a foreign country or powerful, though non-official, dedicated groups within that country.

The Lavdas case, supra, involved an interpretation of the phrase "persecution or fear of persecution on account of race, religion, or political opinions" in subsection 1953(b), discussed above. Chief Judge Kirkpatrick was faced with a situation where the petitioner contended that the Special Inquiry Officer of the Immigration Service had taken a position identical with that of respondent in the instant case in holding that the persecution in question must be by the official government of the foreign country to which petitioner was to be deported. The Court rested its affirmance of the Immigration Service's decision of deportation on the ground that, even if it were assumed that the Special Inquiry Officer was wrong in his interpretation of the statute, the evidence presented by the petitioner had still failed to establish the existence of a reasonable fear of persecution at the then present time.

In sharp contrast, the petitioners in the case at bar have been denied even the opportunity to present any evidence with respect to the specific nature and extent of the threat of persecution or fear of persecution to which they claim they would be exposed should they be returned to Italy.

Chief Judge Kirkpatrick, in the Lavdas case, did state, by way of *obiter dictum*:

"Assuming that the Special Inquiry Officer meant to go as far as the petitioner contends, this Court need not be concerned with the question whether the Act absolutely and in all cases requires the persecution to be by the recognized government of the country. Of course, there could be a situation in which a rebellion might have reached a state of success and organization which would supply an equivalent to governmental persecution, but nothing like that appears in the present case. It is a matter of which judicial notice can be taken and which the Regional Commissioner was bound to consider that the government of Greece is, and has been for several years, well stabilized and controls and has pacified almost the whole country. No doubt reprisals from members of the Communist Party here and there are a possibility, but, as conditions are, I do not think that fear, even well grounded, of such reprisals constitutes the fear of persecution required by the Act."

Chief Judge Kirkpatrick thus recognized that "persecution or fear of persecution" need not always stem from the *de jure* government of the foreign country. If the above-quoted passage is to be regarded as construing "persecution or fear of persecution" as requiring such persecution to be by the *de jure* or *de facto* government of the foreign country or something tantamount thereto, I am constrained to construe the statute differently, with great deference to Chief Judge Kirkpatrick.

I emphasize that my decision does not intimate any opinion regarding

the factual merits of the petitioner's claim of "persecution or fear of persecution." I do not intend to suggest even remotely that there is any probative value to the petitioners' proferred evidence. I hold merely that the petitioners should be given the opportunity to submit such evidence as they have for administrative determination on the issue of "persecution or fear of persecution."

The relief prayed for in the petition is granted by remanding this matter for further proceedings before the Immigration and Naturalization Service of the United States Department of Justice consistent with this opinion. The respondent's cross-motion for summary judgment is denied.